UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROY RUSS, | ) | 1:09-CV-01904 DLB HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| | ) | |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT |
| PAM AHLIN, | ) | |
| | ) | |
| Respondent. | ) | ORDER DENYING CERTIFICATE OF APPEALABILITY |
| | ) | |

Roy Russ (hereinafter "Petitioner"), a civil detainee at Coalinga State Hospital under California's "Sexually Violent Predators Act" (California Welfare and Institutions Code § 6600 et. seq.[1]) ("SVPA"), filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition challenges the constitutionality of his confinement pursuant to a civil commitment petition filed in state court in 2007.

**BACKGROUND**

On April 8, 1988, in the Alameda County Superior Court, Petitioner was convicted of lewd and lascivious acts upon a child (Pen.Code § 288 subd. (a)). See Respondent ("Resp't") Lodged Doc 2 at 45. Petitioner does not challenge that underlying criminal conviction in his habeas petition pending before this court. Rather, he challenges the Kern County Superior Court's subsequent decision, rendered in proceedings under the SVPA, which ordered Petitioner's commitment to the Department of Mental Health as a Sexually Violent Predator (SVP). The record establishes that in 2007, the Kern County District Attorney petitioned the Superior Court for an order committing Petitioner to the Department of Mental Health for an indeterminate period. On August 26, 2008,

---

[1] Unless otherwise indicated, all statutory references are to the California Welfare and Institutions Code.

following a court trial, the Superior Court ordered Petitioner's commitment.

On July 27, 2009, the California Court of Appeal affirmed the Superior Court's judgement in a reasoned opinion. See Answer, Exh. A. On September 30, 2009, the California Supreme Court denied Petitioner's petition for review. See Resp't Lodged Doc. 4.

On October 30, 2009, Petitioner filed the instant federal petition for writ of habeas corpus. See Doc. 1. On June 1, 2010, Respondent filed an answer. On June 18, 2010, Petitioner filed a traverse to the answer. See Doc. 18. The parties have consented to Magistrate Jurisdiction. See Doc. Nos. 3, 6.

### Factual Background[2]

The Court adopts the California Court of Appeal's summation of the facts surrounding Petitioner's commitment as a SVP:

> On April 8, 1988, [Petitioner], pled guilty to committing a lewd and lascivious act on a child under age 14 (Pen.Code, § 288, subd. (a)). On June 29, 2007, the prosecutor filed a petition seeking to have [Petitioner] committed as a sexually violent predator (SVP) pursuant to Welfare and Institutions Code, section 6600.
>
> **Psychological Reports**
>
> Dr. Thomas R. MacSpeiden, a clinical psychologist, prepared a report dated June 30, 2007, that was attached to the petition. Dr. MacSeiden stated that [Petitioner's] offense qualified as a SVP offense under section 6600. [FN3] The victim of [Petitioner's] offense was 13 years old when she was raped by [Petitioner]. [Petitioner] was paroled several times and charged with rape after three of his releases. All three incidents were treated as parole violations and [Petitioner] was recommitted to prison.
>
> > FN3. Section 6600, subdivision (b) enumerates section 288 as a sexually violent offense.
>
> Dr. MacSpeiden's testing of [Petitioner] showed a severe level of psychopathy and an antisocial lifestyle when compared to other prison inmates. [Petitioner's] psychopathic characteristics included pathological lying, manipulative behavior, lack of remorse, and failure to accept responsibility. [Petitioner] also showed impulsivity, poor behavior controls, and a parasitic lifestyle. [Petitioner] is paranoid, though Dr. MacSpeiden attributed this trait to [Petitioner's] projection to free himself of responsibility rather than a psychotic process. Dr. MacSpeiden noted [Petitioner] was declared a Mentally Disordered Offender at Atascadero State Hospital.

---

[2]These facts are derived from the California Court of Appeal's opinion issued on July 27, 2009. See Answer, Exh. A. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004); Moses v. Payne, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

Dr. MacSpeiden diagnosed [Petitioner] with paraphilia, not otherwise specified (sexual activity with non-consenting persons) and antisocial personality disorder. Dr. MacSpeiden gave [Petitioner] the Static-99 test to establish a baseline level of risk that [Petitioner] would commit another sexually oriented offense. [Petitioner] scored a 6 on the Static-99, placing him in the high-risk category for being convicted of another sexual offense. Dr. MacSpeiden concluded [Petitioner] is predisposed to commit violent sexual offenses, representing a substantial danger of reoffending if free. [Petitioner] meets the criteria of a SVP as described in section 6600.

Dr. Dawn Starr, a clinical psychologist, prepared a report dated June 20, 2007. Dr. Starr noted [Petitioner's] conviction of Penal Code section 288 was a qualifying SVP conviction. Dr. Starr noted [Petitioner] violated parole by committing a sexual assault in 1991 and recounted in detail one of [Petitioner's] sexual attacks on a victim after he had been released on parole in 1992. Dr. Starr noted [Petitioner] had been treated for mental illness in the past but denied having mental health problems.

Dr. Starr diagnosed [Petitioner] with paraphilia, not otherwise specified-defined as recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors which involve non-human subjects or the suffering or humiliation of oneself or one's partners, and/or that involve children or other non-consenting persons. [Petitioner] repeatedly engages in behaviors involving non-consensual sex. He demonstrates volitional impairment despite knowing he could get into trouble. Dr. Starr found [Petitioner] is an "SVP statutorily-defined diagnosed mental disorder, which is defined as a congenital or acquired condition affecting emotional or volitional capacity that predisposes an individual to the commission of criminal sexual acts, to the degree that he is a menace to the health and safety of others."

Dr. Starr administered the Static-99 and found [Petitioner] scored a 7, placing him in the high range of risk for future sexual offense. Dr. Starr concluded [Petitioner] was likely to engage in sexually violent predatory criminal behavior and is an SVP as described in section 6600. On July 16, 2007, the trial court found probable cause for the allegations in the petition. On May 23, 2008, the trial court granted [Petitioner's] motion to represent himself after advising [Petitioner] of the dangers and disadvantages of self-representation. The court found [Petitioner] knowingly and intelligently elected to represent himself.

**SVP Hearing**

The hearing to determine whether [Petitioner] is an SVP was conducted on August 26, 2008. Dr. Starr testified that she specializes in forensic evaluations of SVP's under section 6600. Dr. Starr reviewed [Petitioner's] criminal history, including the qualifying conviction and the allegations of sexual offenses while [Petitioner] was on parole. [Petitioner] had no significant work history and had not pursued educational or vocational training. [Petitioner] had previously reported auditory and visual hallucinations and was described as having paranoid beliefs. [Petitioner] had previously been medicated with Risperdal and Seroquel. More recently, [Petitioner] had not made those complaints.

[Petitioner] wrote letters to prosecutors asserting he was being persecuted. [Petitioner] asserted women loved to be with him even after learning he was labeled as a child molester. Dr. Starr diagnosed [Petitioner] as having an SVP statutorily-defined mental disorder. [Petitioner] has paraphilia not otherwise specified and an antisocial personality disorder. [Petitioner] has used a lot of force and violence against females. He was repeatedly caught and sanctioned and still has serious difficulty controlling himself. [Petitioner] appears to be aroused by forcing

> people to have sex against their will.
>
> [Petitioner] fails to show empathy for any of his victims. He suffers also from a paranoid delusional disorder. Dr. Starr diagnosed [Petitioner] with paranoia not otherwise specified. [Petitioner's] paraphilia and antisocial personality disorder qualify him as an SVP. Using the Static-99 test, an evaluative tool like an actuarial instrument, Dr. Starr found [Petitioner] scored a 7. Dr. Starr explained her findings in detail. Dr. Starr explained that a score of 7 placed [Petitioner] in the highest risk category for reoffending. Dr. Starr said [Petitioner] was also at a higher risk of reoffending because he had no protective factors pertaining to his high level of sexual deviance. Adding to [Petitioner's] risk for reoffending are his mental health problems and his feeling that he does not need treatment for any of his problems.
>
> At the conclusion of the hearing, the trial court found true beyond a reasonable doubt that [Petitioner] sustained a conviction for a sexually violent offense and that [Petitioner] had two mental disorders: paraphilia not otherwise specified and a psychotic disorder not otherwise specified. The court found beyond a reasonable doubt that [Petitioner] was an SVP pursuant to section 6600 not amenable to treatment, ordering [Petitioner's] commitment to State Department of Mental Health for an unspecified term.

See Answer, Exh. A (some footnotes omitted).

**Discussion**

**I.      Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000). The fact that Petitioner is challenging his civil commitment for mental illness rather than his underlying conviction, does not change the outcome, as civil commitments are typically challenged in habeas proceedings. See Duncan v. Walker, 533 U.S. 167, 176 (2001) (stating that a state court order of civil commitment satisfies section 2254's "in custody" requirement); Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1139-40 (9th Cir. 2005) ("[D]etainees under an involuntary civil commitment scheme . . . may use a § 2254 habeas petition to challenge a term of confinement").

In habeas corpus cases, venue is proper: (1) in the district of confinement, or (2) in the district of "conviction and sentencing." 28 U.S.C. § 2241(d). Petitioner is currently confined in the Coalinga State Hospital located in Fresno County, California, which is within the Eastern District of California, and thus venue is proper in the Eastern District. 28 U.S.C. § 84; 28 U.S.C. § 2241(d).

## II. **Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. See Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Mental Health pursuant to a state court judgment. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006) overruled in part on other grounds, Hayward, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 529 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Id. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'unreasonable application clause,' a

federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("[B]ecause of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue. . . . This does not mean that Ninth Circuit case law is never relevant to a habeas case after AEDPA.  Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'").  Furthermore, AEDPA requires that the Court give considerable deference to state court decisions.  The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption

that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law.  Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

In the instant petition, Petitioner raises three grounds for relief.  Petitioner raised all three grounds through direct appeal to the California Court of Appeal, which affirmed the judgment in a reasoned opinion.  See Answer, Exh. A.  Petitioner's claims were then raised in a petition for review to the California Supreme Court, which summarily denied review.  See Resp't Lodged Doc. 4.  The California Supreme Court, by its "silent order" denying review is presumed to have denied the claim for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  Therefore, the Court "look[s] through" this decision to the last reasoned decision, in this case, that of the California Court of Appeal, and analyzes whether the state court's decision was an objectively unreasonable application of federal law.  See Nunnemaker, 501 U.S. at 803-804.

### III.     Review of Petitioner's Claims

#### A. Petitioner's claims and overview of the SVPA

Petitioner claims that the state's civil commitment procedures provided under the SVPA violate Due Process, Ex Post Facto law and Equal Protection, Grounds One, Two, and Three, respectively.

Before turning to the merits of Petitioner's claims, a brief background of both the SVPA and the 2006 amendment to the act is instructive.  Under the original SVPA, a person found by a jury to be a sexually violent predator could be civilly committed to the custody of the Department of Mental Health ("DMH") for a period of two years.  Cal. Welf. & Inst.Code, former §§ 6603(d), 6604; People v. McKee, 47 Cal.4th 1172, 1185 (2010).  At this initial determination, the State bore the burden to prove beyond a reasonable doubt that the person was a sexually violent predator.  McKee, 47 Cal.4th at 1185.  Once this finding was made, the person's commitment could not be extended beyond two-years unless a new petition for commitment was filed and the State again proved beyond a reasonable doubt that the person was a sexually violent predator.  Cal. Welf. & Inst.Code, former §§

6604, 6604.1; McKee, 47 Cal.4th at 1185.

In 2006, California voters passed Proposition 83 amending the SVPA. Under Proposition 83, the State is still required to prove beyond a reasonable doubt to a jury that the given person is a sexually violent predator. McKee, 47 Cal.4th at 1186–87. Proposition 83, however, changed the term of the resulting commitment from two years as mandated under the original SVPA to an indeterminate term. Id. at 1186–87.

Along with the indeterminate term, Proposition 83 requires the DMH to file an annual report on whether the committed person still meets the definition of a sexually violent predator or whether conditional or unconditional release of the person is warranted. § 6605(a). If the DMH determines that conditional or unconditional release is warranted and the State contests that determination, the State must prove beyond a reasonable doubt that the person still meets the definition of a sexually violent predator. § 6605(b)-(d). If, on the other hand, the DMH determines that the person still meets the definition of a sexually violent predator, the person may petition the court to be released. § 6608(a). In such a case, the person bears the burden to prove by a preponderance of the evidence that he is no longer a sexually violent predator. § 6608(i).

### B.   Ground One:  Petitioner's Due Process Claim

Petitioner contends that California's Sexual Violent Predator Act ("SVPA"), as amended by Proposition 83, violates due process because § 6605 leaves to the discretion of the DMH whether to recommend conditional release and § 6608 shifts the burden to the committed individual to demonstrate he is no longer mentally ill. In combination, Petitioner argues the SVPA now allows the state to "civilly commit an individual for perpetuity" by "never filing a petition pursuant to section 6605" and then "placing the burden on him to prove, by preponderance of the evidence, that he is fit for release."[3] See Petition at 25. Additionally, Petitioner contends that § 6608(a)'s provision for the detainee's petition for release is inadequate because the subdivision does not grant the detainee the right to an expert.

The California Court of Appeal denied Petitioner's claim, finding neither the indeterminate

---

[3] Petitioner asserts that in its pre-amended form, the SVPA properly placed the burden on the State to periodically prove beyond a reasonable doubt that the person was sufficiently dangerous to justify continuing the civil commitment.

term of commitment nor the limited mechanisms for judicial review violated due process.  See Answer, Exh. A.  Additionally, following its decision in People v. Garcia (2008) 165 Cal.App.4th 1120, the Court of Appeal rejected Petitioner's argument regarding the unavailability of an expert, reasoning that the expert appointed under § 6605 would still be available should the committed individual decide to file a petition in accordance with § 6608.  See Answer, Exh. A.  As discussed below, the Court finds that the state court's decision was not contrary to federal law.

The United States Supreme Court has addressed a variety of due process challenges in the context of state procedures for civil commitment.  The Court has held that "in certain narrow circumstances" states may provide "for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety." Kansas v. Hendricks, 521 U.S. 346, 357 (1997) ("Hendricks").  However, as Respondent correctly states, no clearly established Supreme Court precedent requires that the burden of proof be borne by the prosecution in a subsequent hearing initiated by a detainee.

In Addington v. Texas, 441 U.S. 418, 432–433 (1979), the Supreme Court held that the prosecution bears the burden of proof of clear and convincing evidence in the *initial* commitment proceeding.  California's SVPA in fact comports with Addington's standard as the state requires an even more onerous burden of proof than was required under Addington; namely, proof beyond a reasonable doubt in the initial hearing.

In Jones v. United States, 463 U.S. 354, 370 (1983), the Supreme Court, held that "when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society."  While not specifically addressing the procedures which similarly placed the burden of proof on suitability of release on the acquittee, the Supreme Court expressed no reservation regarding this requirement.  Id. at 363, fn. 11.

Finally, in Kansas v. Hendricks, supra, 521 U.S. 346, the Supreme Court reviewed Kansas' SVPA, which "establishe[d] procedures for the civil commitment of persons who, due to a 'mental abnormality' or a 'personality disorder,' [were] likely to engage in 'predatory acts of sexual

violence.'"[4] Id. at 350. As part of the process for committing an individual the State believed to be a sexually violent predator, a trial was required to determine if the prosecution had demonstrated, beyond a reasonable doubt, that the individual met the requirements to be classified as a sexually violent predator. Id. at 352–353. Once confined, the statute's procedures entitled the detainee to an annual review by the committing court to determine whether further commitment was warranted. Id. In addition, at any time, if the Secretary of Social and Rehabilitation determined the individual's condition had changed such that release was appropriate, the Secretary could authorize the individual to petition for release. Id. Finally, the individual could petition the committing court at any time. Id. Though the Supreme Court upheld the state's statute, once again it did not address the specific procedures for continued confinement or the burden of proof in any of the proceedings. Id. at 356–360. However, the Supreme Court stated: "We have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards." Id. at 357.

In light of the authorities discussed above, Petitioner cannot demonstrate that the state court rejection of his claim was contrary to or an unreasonable application of clearly established Supreme Court precedent. Thus, his claim concerning the SVPA's procedures for continued confinement or the burden of proof in subsequent release proceedings must fail.

Likewise, Petitioner's claim regarding the appointment of an expert lacks merit. Under California's SVPA, Petitioner is entitled to the assistance of an expert at his annual review. Cal. Welfare & Inst.Code § 6605. California courts have stated that although the statute does not specifically provide for the appointment of an expert at a detainee-initiated hearing, such appointment "may be reasonably inferred." People v. McKee, 47 Cal.4th 1172, 1192 (2010). In any case, there is no clearly established Supreme Court precedent which requires an expert be appointed to assist a detainee in a release hearing requested by the detainee. Therefore, habeas relief is unavailable.

---

[4] In Hubbart v. Knapp, 379 F.3d 773 (9th Cir. 2004), the Ninth Circuit rejected a due process challenge to the SVPA, and found California's SVPA similar to the Kansas civil commitment statute upheld in Hendricks. Id. at 781.

**C.     Ground Two: Petitioner's Ex Post Facto Claim**

In his second ground for relief, Petitioner contends that the SVPA violates the constitutional proscription against ex post facto punishment. Specifically, Petitioner asserts that after the passage of Proposition 83, the SVPA's purpose, "can no longer be deemed to have a purpose other than punishment." See Petition at 35. Because the SVPA's indeterminate commitment renders the punishment for a defendant's crime more burdensome then the punishment existing at the time of the crime's commission, the act violates the Constitution's ex post facto clause. See Petition at 30. As explained below, this ground for relief lacks merit.

Addressing Petitioner's ex post facto argument the California Court of Appeal stated:

> [Petitioner] claims that the SVPA is unconstitutional. He contends it violates ex post facto rules. As we have already stated, it is well settled that a commitment under the SVPA is civil in nature and legally does not amount to punishment. (*People v. Vasquez* (2001) 25 Cal.4th 1225, 1231-1232; see also *Hubbart*, *supra*, 19 Cal.4th at p. 1179 [SVPA did not violate constitutional proscription against ex post facto laws because SVPA does not impose punishment or implicate ex post facto concerns]; *People v. Chambless* (1999) 74 Cal.App.4th 773, 776, fn. 2 [since SVPA not punitive and does not impose liability or punishment for criminal conduct, double jeopardy and cruel and unusual punishment claims fail]; see also *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 266-267 [basic purpose of ex post facto clause is to ensure fair warning of consequences of violating penal statutes and to reduce potential for vindictive legislation].)
>
> All of the cases cited above interpret the SVPA prior to its amendment calling for an indefinite term. [Petitioner] argues that the indefinite term makes the current version of the SVPA particularly punitive. This is the same argument that was rejected in *Garcia*, *McKee*, and the other cases currently pending review. We continue to adopt the reasoning of these cases, which unanimously have held that the indefinite term of commitment does not itself convert a civil commitment under the SVPA to a punitive confinement. Double jeopardy, ex post facto rules, and the rule against cruel and unusual punishment are constitutional guarantees applicable only to criminal cases-not to civil commitments under the SVPA.

See Answer, Exh. A at 4.

The Constitution prohibits Congress from passing any "ex post facto law." U.S. Const, art. I, § 9, cl. 3. A penal law is ex post facto if 1) it is retrospective, applying to events that occurred before its enactment, and 2) it disadvantages the offender affected by it. Collins v. Youngblood, 497 U.S. 37, 41 (1990) ("Collins"); Weaver v. Graham, 450 U.S. 24, 29 (1981); Watson v. Estelle, 886 F.2d 1093, 1094 (9th Cir. 1989).

As Petitioner correctly notes, the following statutes implicate ex post facto concerns: 1) one

that punishes as a crime an act previously committed, which was innocent when done; 2) one that makes more burdensome the punishment for a crime, after its commission; and, 3) one that deprives one charged with a crime of any defense available according to law when the act was committed. Collins, supra, 497 U.S. at 46.

Here, petitioner cannot succeed on his ex post facto ground for relief because he cannot show that the SVPA involves punishment. The Ninth Circuit has already concluded that California's SVPA is not subject to an ex post facto attack because the Act is civil in nature and, as such, "'cannot be punitive in nature.'" Hydrick v. Hunter, 500 F.3d 978, 993 (9th Cir. 2007). In so concluding, the Ninth Circuit relied upon the Supreme Court's precedent involving ex post facto challenges to a similar state sexually violent predator act. Id. (citing Seling v. Young, 531 U.S. 250, 267, (2001)). As this court is bound by the Ninth's Circuit's holding, it may not grant habeas relief on the basis of Petitioner's second ground.

### D. Ground Three: Petitioner's Equal Protection Claim

Petitioner argues that individuals like himself, committed to the DMH under the SVPA, are treated unequally vis-a-vis similarly situated individuals committed to the DMH such as mentally disordered offenders ("MDO") (under Cal.Penal Code § 2960, et seq.) or those persons found not guilty by reason of insanity ("NGI"). Under California Penal Code § 2972, MDOs are committed for a period of one year, after which time the State must file a petition for continued treatment under § 2970, and must again prove beyond a reasonable doubt that the patient has a severe mental disorder which renders him or her dangerous. There are also significant differences in the statutory scheme for civil commitment of those found not guilty by reason of insanity. Unlike SVPs, NGIs may not be confined beyond the maximum sentence imposed for the underlying offense unless the district attorney extends the commitment for two years by proving that the person continues to present a substantial danger because of mental illness. Cal.Penal Code § 1026.5(b)(1). Petitioner argues these three groups of individuals subject to civil commitment are all similarly situated, such that the State must demonstrate a compelling interest advanced by the disparate treatment of SVPs.

The California Court of Appeal rejected Petitioner's argument, finding that SVPs are not similarly situated to MDOs and NGIs and stated:

> [Petitioner] also claims that the SVPA violates the equal protection clause of the state and federal Constitutions because it treats sexual offenders who suffer from a mental disorder differently than those offenders with mental disorders who do not commit sexual offenses, including those individuals committed pursuant to the Mentally Disordered Offender Act (MDOA) (Pen.Code, § 2960, et.seq.) (mentally disordered offenders or MDO's), and those individuals committed to the Department of Mental Health after being found not guilty of a crime by reason of insanity (NGI's) (Pen.Code, § 1026, et.seq.). According to [Petitioner], because the classification scheme affects a fundamental right-liberty-the legislative classification scheme is subject to strict scrutiny and must be tailored narrowly to further a compelling state interest. (See *People v. Olivas* (1976) 17 Cal.3d 236, 243 [in cases involving suspect classifications or touching on fundamental interests, state bears burden of establishing compelling interest justifying law]; *People v. Green* (2000) 79 Cal.App.4th 921, 924 [strict scrutiny appropriate standard when measuring claims of disparate treatment in civil commitment].)
>
> SVP's are treated differently than other civil commitments. For example, SVP's are subject to an indefinite commitment while MDO's are limited to one-year renewable terms. NGI's may petition for release after 180 days of commitment, and the court may not summarily reject their petition. (Pen.Code, § 1026.2, subds.(a) & (d); *People v. Soiu* (2003) 106 Cal.App.4th 1191, 1197-1198.) A court may summarily reject a petition filed by an SVP upon a finding that the petition is frivolous. (§ 6608, subd. (a).) SVP's, however, are not similarly situated to persons committed under other civil commitment statutes since, under section 6606, subdivision (b), the SVPA acknowledges that persons committed pursuant to its authority may have mental disorders that will never successfully be treated. [$^{FN5}$] (*People v. Buffington* (1999) 74 Cal.App.4th 1149, 1163; see also *People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1209, 1226.) In contrast, the law anticipates that those individuals committed under the MDOA and Penal Code section 1026 will be restored to sanity or, at the least, be able with treatment to keep their mental disorders in remission. (Pen.Code, §§ 2962, 1026.2.) If persons are not similarly situated for purposes of the law, an equal protection claim fails at the outset. (*People v. Buffington*, *supra*, 74 Cal.App.4th at p. 1155.) We agree with the reasoning and conclusion reached in *Garcia*, and consequently reject [Petitioner's] equal protection argument.
>
> FN5. Section 6606, subdivision (b) states: "Amenability to treatment is not required for a finding that any person is a person described in Section 6600 [i.e., an SVP], nor is it required for treatment of that person. Treatment does not mean that the treatment be successful or potentially successful, nor does it mean that the person must recognize his or her problem and willingly participate in the treatment program."

See Answer, Exh. A at 4.

The Court of Appeal's denial of Petitioner's claim was not unreasonable or contrary to federal law for at least two reasons. First, there is no clearly established federal law recognizing an equal protection challenge to a state's treatment of SVP's in relation to its treatment of other civil detainees such as MDO's and NGI's. See 28 U.S.C. § 2254(d)(1); Carey v. Musladin, 549 U.S. 70, 76-77 (2006) ("[g]iven the lack of holdings from [the Supreme] Court regarding [petitioner's claim], it cannot be said that the state court unreasonably applied clearly established federal law"); Brewer v.

1  Hall, 378 F.3d 952, 955 (9th Cir. 2004) ("[i]f no Supreme Court precedent creates clearly established
2  federal law relating to the legal issue the habeas petitioner raised in state court, the state court's
3  decision cannot be contrary to or an unreasonable application clearly established federal law"), cert.
4  denied, 543 U.S. 1037 (2004).  In fact, to the contrary, federal courts have consistently found the
5  same legitimate public purposes advanced by the California legislature in enacting the SVPA justify
6  dissimilar treatment of SVPs vis-a-vis other types of civil committees.  Young v. Weston, 192 F.3d
7  870, 876 (1999); Hubbart v. Knapp, 379 F.3d 773, 781-82 (9th Cir. 2004) ("Hubbart").  Because
8  Petitioner has not pointed to any clearly established federal law, holding that equal protection is
9  violated under similar circumstances, habeas relief is not warranted.

10       Second, even presuming the existence of controlling federal authority, the Court finds the
11  SVPA does not violate principles of equal protection.  The Equal Protection Clause of the Fourteenth
12  Amendment is "essentially a direction that all persons similarly situated should be treated alike."
13  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "[State] legislatures must have
14  substantial latitude to establish classifications that roughly approximate the nature of the problem
15  perceived, that accommodate competing concerns both public and private, and that account for
16  limitations on the practical ability of the State to remedy every ill." Plyer v. Doe 457 U.S. 202, 216
17  (1982).

18       In applying the Equal Protection Clause to most forms of state action, we seek only the
19  assurance that the classification at issue bears some fair relationship to a legitimate public purpose.
20  Plyer, supra, 457 U.S. at 216.  However, clearly established federal law has consistently evaluated
21  civil commitment statutes such as the California's SVPA under either a rational basis or an
22  intermediate heightened scrutiny standard.  Baxstrom v. Herold, 383 U.S. 107, 114 (1966)
23  (evaluating civil commitment statute to determine whether its classifications were "arbitrary");
24  Jackson v. Indiana, 406 U.S. 715, 729 (1972) (evaluating whether the state provided "reasonable
25  justification" for applying a more lenient commitment standard, and a more stringent standard of
26  release, for certain civil committees); Jones, 463 U.S. at 363, fn. 10 (suggesting in dicta that it was
27  appropriate to apply a rational basis scrutiny in distinguishing between civil commitment and
28  commitment of insanity acquittees); United States v. Sahhar, 56 F.3d 1026, 1028 (9th Cir. 1995)

E. D. California

14

(noting that Supreme Court has never established the proper standard of review and applying heightened scrutiny); Young v. Weston, supra, 192 F.3d at 876, rev'd on other grounds, Seling v. Young, supra, 531 U.S. 250 (affirming district court's analysis of equal protection challenge to Washington's sexually violent predator statute under heightened scrutiny standard).  Because the Court finds California's SVPA withstands scrutiny under the intermediate heightened equal protection standard, the Court need not determine exactly which of the two standards is proper under clearly established federal law.

In determining whether California's SVPA violates equal protection, this Court must first ask whether SVPs are similarly situated to MDOs and NGIs. Rosenbaum v. City and County of San Francisco, 484 F.3d 1142, 1153 (9th Cir. 2007) (first step in equal protection analysis requires court to identify the classification of groups which are similarly situation).  If these different categories of committees are similarly situated, the Court must then determine, under intermediate scrutiny, whether the SVPA's differential treatment of SVPs, vis-a-vis similarly situated civil committees, "is substantially related to a sufficiently important governmental interest." City of Cleburne, supra, 473 U.S. at 441.

In analyzing Petitioner's equal protection claim, the Court of Appeal determined that SVPs are not similarly situated to MDOs and NGIs.  However, shortly after the Court of Appeal rendered its decision, the California Supreme Court reversed course and held that these three types of civil committees are similarly situated for purposes of equal protection analysis. McKee, supra, 47 Cal.4th at 1203, 1207.  This Court need not decide whether the McKee Court's holding, that SVPs, MDOs, and NGIs are similarly situated, is supported by clearly established federal law, as even assuming arguendo the three groups are similarly situated, the state's varying procedures as to these three groups appears to be "substantially related to a sufficiently important government interest."

Upon its initial passage of the SVPA in 1995, the California legislature made the following findings regarding the statute's purpose:

> The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated.  These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence.  The Legislature further finds and declares that it is in the

> interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society.
>
> The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes.

Historical and Statutory Notes, foll. Cal. Welf. & Inst.Code § 6600.

In addition, Proposition 83 provided the following findings in support of the statute's amendments:

> Sex offenders have very high recidivism rates. According to a 1998 report by the U.S. Department of Justice, sex offenders are the least likely to be cured and the most likely to reoffend, and they prey on the most innocent members of our society. More than two-thirds of the victims of rape and sexual assault are under the age of 18. Sex offenders have a dramatically higher recidivism rate for their crimes than any other type of violent felon.

Voter Information Guide, Gen. Elec., text of Prop. 83.

After reviewing California's civil commitment procedures, and the statute's underlying purposes, this Court finds that California's distinct treatment of its SVP's relative to its treatments of other civil detainees, is substantially justified by a legitimate interest in protecting the public from those who commit violent sexual offenses. The California legislature's decision to impose different procedures with regards to its SVPs is well-supported by the SVP's increased risk of recidivism, the relative lower rates of success in reaching a cure for the SVPs' mental disorders, as well as the victim's vulnerability. As the Ninth Circuit explained in Hubbart: "the power of the State to confine persons who, by reason of a mental disease or mental abnormality, constitute a real, continuing and serious danger to society is well established." Hubbart, supra, 379 F.3d at 782 (quoting Justice Kennedy's concurring opinion in Hendricks, supra, 521 U.S. at 372); see also Addington, 441 U.S. at 426 ("[T]he state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill"). For these reasons, and for the reasons previously discussed regarding the absence of clearly established federal law, Petitioner is not

1  entitled to relief on this claim.

2  **IV.    Certificate of Appealability**

3       A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 326; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus Petitioner's claim is not deserving of encouragement to proceed further. Consequently, the Court hereby denies a certificate of appealability.

**ORDER**

Accordingly, the Court ORDERS that:

1.  The petition for writ of habeas corpus is DENIED WITH PREJUDICE;
2.  The Clerk of the Court is DIRECTED to enter Judgment for Respondent; and
3.  A Certificate of Appealability is DENIED.

IT IS SO ORDERED.

Dated:   **September 8, 2011**          /s/ **Dennis L. Beck**
                                                         UNITED STATES MAGISTRATE JUDGE