1
2
3
4

# UNITED STATES DISTRICT COURT

5
6

EASTERN DISTRICT OF CALIFORNIA

7   ROY RUSS,                          )   1:09-CV-01904 DLB HC
                                       )
8                  Petitioner,         )   ORDER DENYING PETITION FOR WRIT
                                       )   OF HABEAS CORPUS
9          v.                          )
                                       )   ORDER DIRECTING CLERK OF THE
10  PAM AHLIN,                         )   COURT TO ENTER JUDGMENT
                                       )
11                 Respondent.         )   ORDER DENYING CERTIFICATE OF
                                       )   APPEALABILITY
12
13
14          Roy Russ (hereinafter "Petitioner"), a civil detainee at Coalinga State Hospital under

15  California's "Sexually Violent Predators Act" (California Welfare and Institutions Code § 6600 et.

16  seq.[1]) ("SVPA"), filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

17  The petition challenges the constitutionality of his confinement pursuant to a civil commitment

18  petition filed in state court in 2007.

                              **BACKGROUND**
19
20          On April 8, 1988, in the Alameda County Superior Court, Petitioner was convicted of lewd

21  and lascivious acts upon a child (Pen.Code § 288 subd. (a)).  See Respondent ("Resp't") Lodged Doc

22  2 at 45.  Petitioner does not challenge that underlying criminal conviction in his habeas petition

23  pending before this court.  Rather, he challenges the Kern County Superior Court's subsequent

24  decision, rendered in proceedings under the SVPA, which ordered Petitioner's commitment to the

25  Department of Mental Health as a Sexually Violent Predator (SVP).  The record establishes that in

26  2007, the Kern County District Attorney petitioned the Superior Court for an order committing

27  Petitioner to the Department of Mental Health for an indeterminate period.  On August 26, 2008,

28          [1]Unless otherwise indicated, all statutory references are to the California Welfare and Institutions Code.

1 || following a court trial, the Superior Court ordered Petitioner's commitment.

2 ||         On July 27, 2009, the California Court of Appeal affirmed the Superior Court's judgement in

3 || a reasoned opinion.  See Answer, Exh. A.  On September 30, 2009, the California Supreme Court

4 || denied Petitioner's petition for review.  See Resp't Lodged Doc. 4.

5 ||         On October 30, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.

6 || See Doc. 1.  On June 1, 2010, Respondent filed an answer.  On June 18, 2010, Petitioner filed a

7 || traverse  to the answer.  See Doc. 18.  The parties have consented to Magistrate Jurisdiction.  See

8 || Doc. Nos. 3, 6.

9 || **Factual Background[2]**

10 ||         The Court adopts the California Court of Appeal's summation of the facts surrounding

11 || Petitioner's commitment as a SVP:

> On April 8, 1988, [Petitioner], pled guilty to committing a lewd and lascivious act on a child under age 14 (Pen.Code, § 288, subd. (a)).  On June 29, 2007, the prosecutor filed a petition seeking to have [Petitioner] committed as a sexually violent predator (SVP) pursuant to Welfare and Institutions Code, section 6600.

> **Psychological Reports**

> Dr. Thomas R. MacSpeiden, a clinical psychologist, prepared a report dated June 30, 2007, that was attached to the petition.  Dr. MacSeiden stated that [Petitioner's] offense qualified as a SVP offense under section 6600.  [FN3]  The victim of [Petitioner's] offense was 13 years old when she was raped by [Petitioner].  [Petitioner] was paroled several times and charged with rape after three of his releases.  All three incidents were treated as parole violations and [Petitioner] was recommitted to prison.

>     FN3.  Section 6600, subdivision (b) enumerates section 288 as a sexually violent offense.

> Dr. MacSpeiden's testing of [Petitioner] showed a severe level of psychopathy and an antisocial lifestyle when compared to other prison inmates.  [Petitioner's] psychopathic characteristics included pathological lying, manipulative behavior, lack of remorse, and failure to accept responsibility.  [Petitioner] also showed impulsivity, poor behavior controls, and a parasitic lifestyle.  [Petitioner] is paranoid, though Dr. MacSpeiden attributed this trait to [Petitioner's] projection to free himself of responsibility rather than a psychotic process.  Dr. MacSpeiden noted [Petitioner] was declared a Mentally Disordered Offender at Atascadero State Hospital.

---

27 || [2]These facts are derived from the California Court of Appeal's opinion issued on July 27, 2009.  See Answer, Exh. A.  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004); Moses v. Payne, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

1   Dr. MacSpeiden diagnosed [Petitioner] with paraphilia, not otherwise specified
    (sexual activity with non-consenting persons) and antisocial personality disorder.  Dr.
2   MacSpeiden gave [Petitioner] the Static-99 test to establish a baseline level of risk
    that [Petitioner] would commit another sexually oriented offense.  [Petitioner] scored
3   a 6 on the Static-99, placing him in the high-risk category for being convicted of
    another sexual offense.  Dr. MacSpeiden concluded [Petitioner] is predisposed to
4   commit violent sexual offenses, representing a substantial danger of reoffending if
    free.  [Petitioner] meets the criteria of a SVP as described in section 6600.

5
    Dr. Dawn Starr, a clinical psychologist, prepared a report dated June 20, 2007.  Dr.
6   Starr noted [Petitioner's] conviction of Penal Code section 288 was a qualifying SVP
    conviction.  Dr. Starr noted [Petitioner] violated parole by committing a sexual
7   assault in 1991 and recounted in detail one of [Petitioner's] sexual attacks on a victim
    after he had been released on parole in 1992.  Dr. Starr noted [Petitioner] had been
8   treated for mental illness in the past but denied having mental health problems.

9   Dr. Starr diagnosed [Petitioner] with paraphilia, not otherwise specified-defined as
    recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors which
10  involve non-human subjects or the suffering or humiliation of oneself or one's
    partners, and/or that involve children or other non-consenting persons.  [Petitioner]
11  repeatedly engages in behaviors involving non-consensual sex.  He demonstrates
    volitional impairment despite knowing he could get into trouble.  Dr. Starr found
12  [Petitioner] is an "SVP statutorily-defined diagnosed mental disorder, which is
    defined as a congenital or acquired condition affecting emotional or volitional
13  capacity that predisposes an individual to the commission of criminal sexual acts, to
    the degree that he is a menace to the health and safety of others."
14
    Dr. Starr administered the Static-99 and found [Petitioner] scored a 7, placing him in
15  the high range of risk for future sexual offense.  Dr. Starr concluded [Petitioner] was
    likely to engage in sexually violent predatory criminal behavior and is an SVP as
16  described in section 6600.  On July 16, 2007, the trial court found probable cause for
    the allegations in the petition.  On May 23, 2008, the trial court granted [Petitioner's]
17  motion to represent himself after advising [Petitioner] of the dangers and
    disadvantages of self-representation.  The court found [Petitioner] knowingly and
18  intelligently elected to represent himself.

19  **SVP Hearing**

20  The hearing to determine whether [Petitioner] is an SVP was conducted on August
    26, 2008.  Dr. Starr testified that she specializes in forensic evaluations of SVP's
21  under section 6600.  Dr. Starr reviewed [Petitioner's] criminal history, including the
    qualifying conviction and the allegations of sexual offenses while [Petitioner] was on
22  parole.  [Petitioner] had no significant work history and had not pursued educational
    or vocational training.  [Petitioner] had previously reported auditory and visual
23  hallucinations and was described as having paranoid beliefs.  [Petitioner] had
    previously been medicated with Risperdal and Seroquel.  More recently, [Petitioner]
24  had not made those complaints.

25  [Petitioner] wrote letters to prosecutors asserting he was being persecuted.
    [Petitioner] asserted women loved to be with him even after learning he was labeled
26  as a child molester.  Dr. Starr diagnosed [Petitioner] as having an SVP
    statutorily-defined mental disorder.  [Petitioner] has paraphilia not otherwise specified
27  and an antisocial personality disorder.  [Petitioner] has used a lot of force and
    violence against females.  He was repeatedly caught and sanctioned and still has
28  serious difficulty controlling himself.  [Petitioner] appears to be aroused by forcing

1   people to have sex against their will.

2   [Petitioner] fails to show empathy for any of his victims.  He suffers also from a
    paranoid delusional disorder.  Dr. Starr diagnosed [Petitioner] with paranoia not
3   otherwise specified.  [Petitioner's] paraphilia and antisocial personality disorder
    qualify him as an SVP.  Using the Static-99 test, an evaluative tool like an actuarial
4   instrument, Dr. Starr found [Petitioner] scored a 7.  Dr. Starr explained her findings in
    detail.  Dr. Starr explained that a score of 7 placed [Petitioner] in the highest risk
5   category for reoffending.  Dr. Starr said [Petitioner] was also at a higher risk of
    reoffending because he had no protective factors pertaining to his high level of sexual
6   deviance.  Adding to [Petitioner's] risk for reoffending are his mental health problems
    and his feeling that he does not need treatment for any of his problems.
7
    At the conclusion of the hearing, the trial court found true beyond a reasonable doubt
8   that [Petitioner] sustained a conviction for a sexually violent offense and that
    [Petitioner] had two mental disorders:  paraphilia not otherwise specified and a
9   psychotic disorder not otherwise specified.  The court found beyond a reasonable
    doubt that [Petitioner] was an SVP pursuant to section 6600 not amenable to
10  treatment, ordering [Petitioner's] commitment to State Department of Mental Health
    for an unspecified term.
11
See Answer, Exh. A (some footnotes omitted).
12
**Discussion**
13
**I.      Jurisdiction and Venue**
14
        A person in custody pursuant to the judgment of a state court may file a petition for a writ of
15
habeas corpus in the United States district courts if the custody is in violation of the Constitution or
16
laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v.
17
Taylor, 529 U.S. 362, 375, n.7 (2000).  The fact that Petitioner is challenging his civil commitment
18
for mental illness rather than his underlying conviction, does not change the outcome, as civil
19
commitments are typically challenged in habeas proceedings.  See Duncan v. Walker, 533 U.S. 167,
20
176 (2001) (stating that a state court order of civil commitment satisfies section 2254's "in custody"
21
requirement); Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1139-40 (9th Cir. 2005) ( "[D]etainees
22
under an involuntary civil commitment scheme . . . may use a § 2254 habeas petition to challenge a
23
term of confinement").
24
        In habeas corpus cases, venue is proper:  (1) in the district of confinement, or (2) in the
25
district of "conviction and sentencing."  28 U.S.C. § 2241(d).  Petitioner is currently confined in the
26
Coalinga State Hospital located in Fresno County, California, which is within the Eastern District of
27
California, and thus venue is proper in the Eastern District.  28 U.S.C. § 84; 28 U.S.C. § 2241(d).
28

U.S. District Court
E. D. California                                          4

1    II.    **Standard of Review**

2        On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of

3    1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

4    enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320, 326-27 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499

5    (9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently

6    governed by its provisions.  <u>See</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003).  Thus, the petition

7    "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was

8    'contrary to, or involved an unreasonable application of, clearly established federal law, as

9    determined by the Supreme Court of the United States.'" <u>Irons v. Carey</u>, 505 F.3d 846, 850 (9th Cir.

10   2007) (quoting 28 U.S.C. § 2254(d)(1))*,* <u>overruled in part on other grounds</u>, <u>Hayward v. Marshall</u>,

11   603 F.3d 546, 555 (9th Cir. 2010) (en banc); <u>see</u> <u>Lockyer</u>, 538 U.S. at 70-71.

12       Title 28 of the United States Code, section 2254 remains the exclusive vehicle for

13   Petitioner's habeas petition as Petitioner is in the custody of the California Department of Mental

14   Health pursuant to a state court judgment.  <u>See</u> <u>Sass v. California Board of Prison Terms</u>, 461 F.3d

15   1123, 1126-27 (9th Cir. 2006) <u>overruled in part on other grounds</u>, <u>Hayward</u>, 603 F.3d at 555.  As a

16   threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as

17   determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71 (quoting 28

18   U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look

19   to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the

20   relevant state-court decision." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 412).  "In other words, 'clearly

21   established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

22   the Supreme Court at the time the state court renders its decision." <u>Id.</u>  Finally, this Court must

23   consider whether the state court's decision was "contrary to, or involved an unreasonable application

24   of, clearly established Federal law." <u>Id.</u> at 72 (quoting 28 U.S.C. § 2254(d)(1)).  "Under the

25   'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion

26   opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a

27   case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529

28   U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72.  "Under the 'unreasonable application clause,' a

1  federal habeas court may grant the writ if the state court identifies the correct governing legal

2  principle from [the] Court's decisions but unreasonably applies that principle to the facts of the

3  prisoner's case." Williams, 529 U.S. at 413.  "[A] federal court may not issue the writ simply

4  because the court concludes in its independent judgment that the relevant state court decision applied

5  clearly established federal law erroneously or incorrectly.  Rather, that application must also be

6  unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry

7  should ask whether the State court's application of clearly established federal law was "objectively

8  unreasonable." Id. at 409.

9          Petitioner bears the burden of establishing that the state court's decision is contrary to or

10  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

11  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

12  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

13  decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While

14  *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents

15  need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v.

16  Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("[B]ecause of the 1996 AEDPA amendments, it

17  can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit

18  precedent on a federal Constitutional issue. . . .  This does not mean that Ninth Circuit case law is

19  never relevant to a habeas case after AEDPA.  Our cases may be persuasive authority for purposes of

20  determining whether a particular state court decision is an 'unreasonable application' of Supreme

21  Court law, and also may help us determine what law is 'clearly established'").  Furthermore, AEDPA

22  requires that the Court give considerable deference to state court decisions.  The state court's factual

23  findings are presumed correct.  28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's

24  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

25          The initial step in applying AEDPA's standards is to "identify the state court decision that is

26  appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more

27  than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

28  reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption

U.S. District Court
E. D. California

6

1   that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same

2   ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained

3   state court decisions to the last reasoned decision to determine whether that decision was contrary to

4   or an unreasonable application of clearly established federal law.  Bailey v. Rae, 339 F.3d 1107,

5   1112-13 (9th Cir. 2003).

6          In the instant petition, Petitioner raises three grounds for relief.  Petitioner raised all three

7   grounds through direct appeal to the California Court of Appeal, which affirmed the judgment in a

8   reasoned opinion.  See Answer, Exh. A.  Petitioner's claims were then raised in a petition for review

9   to the California Supreme Court, which summarily denied review.  See Resp't Lodged Doc. 4.  The

10   California Supreme Court, by its "silent order" denying review is presumed to have denied the claim

11   for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797,

12   803 (1991).  Therefore, the Court "look[s] through" this decision to the last reasoned decision, in this

13   case, that of the California Court of Appeal, and analyzes whether the state court's decision was an

14   objectively unreasonable application of federal law.  See Nunnemaker, 501 U.S. at 803-804.

15   **III.      Review of Petitioner's Claims**

16          **A.  Petitioner's claims and overview of the SVPA**

17          Petitioner claims that the state's civil commitment procedures provided under the SVPA

18   violate Due Process, Ex Post Facto law and Equal Protection, Grounds One, Two, and Three,

19   respectively.

20          Before turning to the merits of Petitioner's claims, a brief background of both the SVPA and

21   the 2006 amendment to the act is instructive.  Under the original SVPA, a person found by a jury to

22   be a sexually violent predator could be civilly committed to the custody of the Department of Mental

23   Health ("DMH") for a period of two years.  Cal. Welf. & Inst.Code, former §§ 6603(d), 6604; People

24   v. McKee, 47 Cal.4th 1172, 1185 (2010).  At this initial determination, the State bore the burden to

25   prove beyond a reasonable doubt that the person was a sexually violent predator.  McKee, 47 Cal.4th

26   at 1185.  Once this finding was made, the person's commitment could not be extended beyond

27   two-years unless a new petition for commitment was filed and the State again proved beyond a

28   reasonable doubt that the person was a sexually violent predator.  Cal. Welf. & Inst.Code, former §§

U.S. District Court
E. D. California

1    6604, 6604.1; McKee, 47 Cal.4th at 1185.

2         In 2006, California voters passed Proposition 83 amending the SVPA.  Under Proposition 83,

3    the State is still required to prove beyond a reasonable doubt to a jury that the given person is a

4    sexually violent predator.  McKee, 47 Cal.4th at 1186–87.  Proposition 83, however, changed the

5    term of the resulting commitment from two years as mandated under the original SVPA to an

6    indeterminate term.  Id. at 1186–87.

7         Along with the indeterminate term, Proposition 83 requires the DMH to file an annual report

8    on whether the committed person still meets the definition of a sexually violent predator or whether

9    conditional or unconditional release of the person is warranted.  § 6605(a).  If the DMH determines

10   that conditional or unconditional release is warranted and the State contests that determination, the

11   State must prove beyond a reasonable doubt that the person still meets the definition of a sexually

12   violent predator.  § 6605(b)-(d).  If, on the other hand, the DMH determines that the person still

13   meets the definition of a sexually violent predator, the person may petition the court to be released.  §

14   6608(a).  In such a case, the person bears the burden to prove by a preponderance of the evidence

15   that he is no longer a sexually violent predator.  § 6608(i).

16        **B.       Ground One:  Petitioner's Due Process Claim**

17        Petitioner contends that California's Sexual Violent Predator Act ("SVPA"), as amended by

18   Proposition 83, violates due process because § 6605 leaves to the discretion of the DMH whether to

19   recommend conditional release and § 6608 shifts the burden to the committed individual to

20   demonstrate he is no longer mentally ill.  In combination, Petitioner argues the SVPA now allows the

21   state to "civilly commit an individual for perpetuity" by "never filing a petition pursuant to section

22   6605" and then "placing the burden on him to prove, by preponderance of the evidence, that he is fit

23   for release."[3]  See Petition at 25.  Additionally, Petitioner contends that § 6608(a)'s provision for the

24   detainee's petition for release is inadequate because the subdivision does not grant the detainee the

25   right to an expert.

26        The California Court of Appeal denied Petitioner's claim, finding neither the indeterminate

27   _____

28        [3]Petitioner asserts that in its pre-amended form, the SVPA properly placed the burden on the State to periodically
     prove beyond a reasonable doubt that the person was sufficiently dangerous to justify continuing the civil commitment.

U.S. District Court
E. D. California                                              8

1   term of commitment nor the limited mechanisms for judicial review violated due process.  See

2   Answer, Exh. A.  Additionally, following its decision in People v. Garcia (2008) 165 Cal.App.4th

3   1120, the Court of Appeal rejected Petitioner's argument regarding the unavailability of an expert,

4   reasoning that the expert appointed under § 6605 would still be available should the committed

5   individual decide to file a petition in accordance with § 6608.  See Answer, Exh. A.  As discussed

6   below, the Court finds that the state court's decision was not contrary to federal law.

7         The United States Supreme Court has addressed a variety of due process challenges in the

8   context of state procedures for civil commitment.  The Court has held that "in certain narrow

9   circumstances" states may provide "for the forcible civil detainment of people who are unable to

10  control their behavior and who thereby pose a danger to the public health and safety."  Kansas v.

11  Hendricks, 521 U.S. 346, 357 (1997) ("Hendricks").  However, as Respondent correctly states, no

12  clearly established Supreme Court precedent requires that the burden of proof be borne by the

13  prosecution in a subsequent hearing initiated by a detainee.

14        In Addington v. Texas, 441 U.S. 418, 432–433 (1979), the Supreme Court held that the

15  prosecution bears the burden of proof of clear and convincing evidence in the *initial* commitment

16  proceeding.  California's SVPA in fact comports with Addington's standard as the state requires an

17  even more onerous burden of proof than was required under Addington; namely, proof beyond a

18  reasonable doubt in the initial hearing.

19        In Jones v. United States, 463 U.S. 354, 370 (1983), the Supreme Court, held that "when a

20  criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by

21  reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to

22  confine him to a mental institution until such time as he has regained his sanity or is no longer a

23  danger to himself or society."  While not specifically addressing the procedures which similarly

24  placed the burden of proof on suitability of release on the acquittee, the Supreme Court expressed no

25  reservation regarding this requirement.  Id. at 363, fn. 11.

26        Finally, in Kansas v. Hendricks, supra, 521 U.S. 346, the Supreme Court reviewed Kansas'

27  SVPA, which "establishe[d] procedures for the civil commitment of persons who, due to a 'mental

28  abnormality' or a 'personality disorder,' [were] likely to engage in 'predatory acts of sexual

U.S. District Court
E. D. California

1    violence.'"[4]  Id. at 350.  As part of the process for committing an individual the State believed to be a

2    sexually violent predator, a trial was required to determine if the prosecution had demonstrated,

3    beyond a reasonable doubt, that the individual met the requirements to be classified as a sexually

4    violent predator.  Id. at 352–353.  Once confined, the statute's procedures entitled the detainee to an

5    annual review by the committing court to determine whether further commitment was warranted.  Id.

6    In addition, at any time, if the Secretary of Social and Rehabilitation determined the individual's

7    condition had changed such that release was appropriate, the Secretary could authorize the individual

8    to petition for release.  Id.  Finally, the individual could petition the committing court at any time.

9    Id.  Though the Supreme Court upheld the state's statute, once again it did not address the specific

10   procedures for continued confinement or the burden of proof in any of the proceedings.  Id. at

11   356–360.  However, the Supreme Court stated:  "We have consistently upheld such involuntary

12   commitment statutes provided the confinement takes place pursuant to proper procedures and

13   evidentiary standards."  Id. at 357.

14          In light of the authorities discussed above, Petitioner cannot demonstrate that the state court

15   rejection of his claim was contrary to or an unreasonable application of clearly established Supreme

16   Court precedent.  Thus, his claim concerning the SVPA's procedures for continued confinement or

17   the burden of proof in subsequent release proceedings must fail.

18          Likewise, Petitioner's claim regarding the appointment of an expert lacks merit.  Under

19   California's SVPA, Petitioner is entitled to the assistance of an expert at his annual review. Cal.

20   Welfare & Inst.Code § 6605.  California courts have stated that although the statute does not

21   specifically provide for the appointment of an expert at a detainee-initiated hearing, such

22   appointment "may be reasonably inferred."  People v. McKee, 47 Cal.4th 1172, 1192 (2010).  In any

23   case, there is no clearly established Supreme Court precedent which requires an expert be appointed

24   to assist a detainee in a release hearing requested by the detainee.  Therefore, habeas relief is

25   unavailable.

26

27

28          [4]In Hubbart v. Knapp, 379 F.3d 773 (9th Cir. 2004), the Ninth Circuit rejected a due process challenge to the SVPA, and found California's SVPA similar to the Kansas civil commitment statute upheld in Hendricks. Id. at 781.

1

**C.      Ground Two:  Petitioner's Ex Post Facto Claim**

2

In his second ground for relief, Petitioner contends that the SVPA violates the constitutional

3

proscription against ex post facto punishment.  Specifically, Petitioner asserts that after the passage

4

of Proposition 83, the SVPA's purpose, "can no longer be deemed to have a purpose other than

5

punishment."  See Petition at 35.  Because the SVPA's indeterminate commitment renders the

6

punishment for a defendant's crime more burdensome then the punishment existing at the time of the

7

crime's commission, the act violates the Constitution's ex post facto clause.  See Petition at 30.  As

8

explained below, this ground for relief lacks merit.

9

Addressing Petitioner's ex post facto argument the California Court of Appeal stated:

10

[Petitioner] claims that the SVPA is unconstitutional.  He contends it violates ex post
facto rules.  As we have already stated, it is well settled that a commitment under the

11

SVPA is civil in nature and legally does not amount to punishment. (*People v.
Vasquez* (2001) 25 Cal.4th 1225, 1231-1232; see also *Hubbart*, *supra*, 19 Cal.4th at p.

12

1179 [SVPA did not violate constitutional proscription against ex post facto laws
because SVPA does not impose punishment or implicate ex post facto concerns];

13

*People v. Chambless* (1999) 74 Cal.App.4th 773, 776, fn. 2 [since SVPA not punitive
and does not impose liability or punishment for criminal conduct, double jeopardy

14

and cruel and unusual punishment claims fail]; see also *Landgraf v. USI Film
Products* (1994) 511 U.S. 244, 266-267 [basic purpose of ex post facto clause is to

15

ensure fair warning of consequences of violating penal statutes and to reduce potential
for vindictive legislation].)

16

All of the cases cited above interpret the SVPA prior to its amendment calling for an

17

indefinite term.  [Petitioner] argues that the indefinite term makes the current version
of the SVPA particularly punitive.  This is the same argument that was rejected in

18

*Garcia*, *McKee*, and the other cases currently pending review.  We continue to adopt
the reasoning of these cases, which unanimously have held that the indefinite term of

19

commitment does not itself convert a civil commitment under the SVPA to a punitive
confinement.  Double jeopardy, ex post facto rules, and the rule against cruel and

20

unusual punishment are constitutional guarantees applicable only to criminal
cases-not to civil commitments under the SVPA.

21

See Answer, Exh. A at 4.

22

The Constitution prohibits Congress from passing any "ex post facto law."  U.S. Const, art. I,

23

§ 9, cl. 3.  A penal law is ex post facto if 1) it is retrospective, applying to events that occurred before

24

its enactment, and 2) it disadvantages the offender affected by it.  Collins v. Youngblood, 497 U.S.

25

37, 41 (1990) ("Collins"); Weaver v. Graham, 450 U.S. 24, 29 (1981); Watson v. Estelle, 886 F.2d

26

1093, 1094 (9th Cir. 1989).

27

As Petitioner correctly notes, the following statutes implicate ex post facto concerns: 1) one

28

1   that punishes as a crime an act previously committed, which was innocent when done; 2) one that

2   makes more burdensome the punishment for a crime, after its commission; and, 3) one that deprives

3   one charged with a crime of any defense available according to law when the act was committed.

4   Collins, supra, 497 U.S. at 46.

5          Here, petitioner cannot succeed on his ex post facto ground for relief because he cannot show

6   that the SVPA involves punishment.  The Ninth Circuit has already concluded that California's

7   SVPA is not subject to an ex post facto attack because the Act is civil in nature and, as such,

8   "'cannot be punitive in nature.'"  Hydrick v. Hunter, 500 F.3d 978, 993 (9th Cir. 2007).  In so

9   concluding, the Ninth Circuit relied upon the Supreme Court's precedent involving ex post facto

10  challenges to a similar state sexually violent predator act.  Id. (citing Seling v. Young, 531 U.S. 250,

11  267, (2001)).  As this court is bound by the Ninth's Circuit's holding, it may not grant habeas relief

12  on the basis of Petitioner's second ground.

13         **D.      Ground Three: Petitioner's Equal Protection Claim**

14         Petitioner argues that individuals like himself, committed to the DMH under the SVPA, are

15  treated unequally vis-a-vis similarly situated individuals committed to the DMH such as mentally

16  disordered offenders ("MDO") (under Cal.Penal Code § 2960, et seq.) or those persons found not

17  guilty by reason of insanity ("NGI").  Under California Penal Code § 2972, MDOs are committed for

18  a period of one year, after which time the State must file a petition for continued treatment under §

19  2970, and must again prove beyond a reasonable doubt that the patient has a severe mental disorder

20  which renders him or her dangerous.  There are also significant differences in the statutory scheme

21  for civil commitment of those found not guilty by reason of insanity.  Unlike SVPs, NGIs may not be

22  confined beyond the maximum sentence imposed for the underlying offense unless the district

23  attorney extends the commitment for two years by proving that the person continues to present a

24  substantial danger because of mental illness.  Cal.Penal Code § 1026.5(b)(1).  Petitioner argues these

25  three groups of individuals subject to civil commitment are all similarly situated, such that the State

26  must demonstrate a compelling interest advanced by the disparate treatment of SVPs.

27         The California Court of Appeal rejected Petitioner's argument, finding that SVPs are not

28  similarly situated to MDOs and NGIs and stated:

1

2

3

4

5

6

7

8

[Petitioner] also claims that the SVPA violates the equal protection clause of the state and federal Constitutions because it treats sexual offenders who suffer from a mental disorder differently than those offenders with mental disorders who do not commit sexual offenses, including those individuals committed pursuant to the Mentally Disordered Offender Act (MDOA) (Pen.Code, § 2960, et.seq.) (mentally disordered offenders or MDO's), and those individuals committed to the Department of Mental Health after being found not guilty of a crime by reason of insanity (NGI's) (Pen.Code, § 1026, et.seq.).  According to [Petitioner], because the classification scheme affects a fundamental right-liberty-the legislative classification scheme is subject to strict scrutiny and must be tailored narrowly to further a compelling state interest.  (See *People v. Olivas* (1976) 17 Cal.3d 236, 243 [in cases involving suspect classifications or touching on fundamental interests, state bears burden of establishing compelling interest justifying law]; *People v. Green* (2000) 79 Cal.App.4th 921, 924 [strict scrutiny appropriate standard when measuring claims of disparate treatment in civil commitment].)

9

10

11

12

13

14

15

16

17

SVP's are treated differently than other civil commitments.  For example, SVP's are subject to an indefinite commitment while MDO's are limited to one-year renewable terms.  NGI's may petition for release after 180 days of commitment, and the court may not summarily reject their petition. (Pen.Code, § 1026.2, subds.(a) & (d); *People v. Soiu* (2003) 106 Cal.App.4th 1191, 1197-1198.)  A court may summarily reject a petition filed by an SVP upon a finding that the petition is frivolous. (§ 6608, subd. (a).)  SVP's, however, are not similarly situated to persons committed under other civil commitment statutes since, under section 6606, subdivision (b), the SVPA acknowledges that persons committed pursuant to its authority may have mental disorders that will never successfully be treated. [FN5] (*People v. Buffington* (1999) 74 Cal.App.4th 1149, 1163; see also *People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1209, 1226.)  In contrast, the law anticipates that those individuals committed under the MDOA and Penal Code section 1026 will be restored to sanity or, at the least, be able with treatment to keep their mental disorders in remission. (Pen.Code, §§ 2962, 1026.2.)  If persons are not similarly situated for purposes of the law, an equal protection claim fails at the outset. (*People v. Buffington*, *supra*, 74 Cal.App.4th at p. 1155.)  We agree with the reasoning and conclusion reached in *Garcia*, and consequently reject [Petitioner's] equal protection argument.

18

19

20

FN5.  Section 6606, subdivision (b) states:  "Amenability to treatment is not required for a finding that any person is a person described in Section 6600 [i.e., an SVP], nor is it required for treatment of that person.  Treatment does not mean that the treatment be successful or potentially successful, nor does it mean that the person must recognize his or her problem and willingly participate in the treatment program."

21

22

See Answer, Exh. A at 4.

23

24

25

26

27

28

The Court of Appeal's denial of Petitioner's claim was not unreasonable or contrary to federal law for at least two reasons.  First, there is no clearly established federal law recognizing an equal protection challenge to a state's treatment of SVP's in relation to its treatment of other civil detainees such as MDO's and NGI's.  See 28 U.S.C. § 2254(d)(1); Carey v. Musladin, 549 U.S. 70, 76-77 (2006) ("[g]iven the lack of holdings from [the Supreme] Court regarding [petitioner's claim], it cannot be said that the state court unreasonably applied clearly established federal law"); Brewer v.

1    Hall, 378 F.3d 952, 955 (9th Cir. 2004) ("[i]f no Supreme Court precedent creates clearly established

2    federal law relating to the legal issue the habeas petitioner raised in state court, the state court's

3    decision cannot be contrary to or an unreasonable application clearly established federal law"), cert.

4    denied, 543 U.S. 1037 (2004).  In fact, to the contrary, federal courts have consistently found the

5    same legitimate public purposes advanced by the California legislature in enacting the SVPA justify

6    dissimilar treatment of SVPs vis-a-vis other types of civil committees.  Young v. Weston, 192 F.3d

7    870, 876 (1999); Hubbart v. Knapp, 379 F.3d 773, 781-82 (9th Cir. 2004) ("Hubbart").  Because

8    Petitioner has not pointed to any clearly established federal law, holding that equal protection is

9    violated under similar circumstances, habeas relief is not warranted.

10           Second, even presuming the existence of controlling federal authority, the Court finds the

11   SVPA does not violate principles of equal protection.  The Equal Protection Clause of the Fourteenth

12   Amendment is "essentially a direction that all persons similarly situated should be treated alike."

13   City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "[State] legislatures must have

14   substantial latitude to establish classifications that roughly approximate the nature of the problem

15   perceived, that accommodate competing concerns both public and private, and that account for

16   limitations on the practical ability of the State to remedy every ill."  Plyer v. Doe 457 U.S. 202, 216

17   (1982).

18           In applying the Equal Protection Clause to most forms of state action, we seek only the

19   assurance that the classification at issue bears some fair relationship to a legitimate public purpose.

20   Plyler, supra, 457 U.S. at 216.  However, clearly established federal law has consistently evaluated

21   civil commitment statutes such as the California's SVPA under either a rational basis or an

22   intermediate heightened scrutiny standard.  Baxstrom v. Herold, 383 U.S. 107, 114 (1966)

23   (evaluating civil commitment statute to determine whether its classifications were "arbitrary");

24   Jackson v. Indiana, 406 U.S. 715, 729 (1972) (evaluating whether the state provided "reasonable

25   justification" for applying a more lenient commitment standard, and a more stringent standard of

26   release, for certain civil committees); Jones, 463 U.S. at 363, fn. 10 (suggesting in dicta that it was

27   appropriate to apply a rational basis scrutiny in distinguishing between civil commitment and

28   commitment of insanity acquittees); United States v. Sahhar, 56 F.3d 1026, 1028 (9th Cir. 1995)

1  (noting that Supreme Court has never established the proper standard of review and applying

2  heightened scrutiny); Young v. Weston, supra, 192 F.3d at 876, rev'd on other grounds, Seling v.

3  Young, supra, 531 U.S. 250 (affirming district court's analysis of equal protection challenge to

4  Washington's sexually violent predator statute under heightened scrutiny standard).  Because the

5  Court finds California's SVPA withstands scrutiny under the intermediate heightened equal

6  protection standard, the Court need not determine exactly which of the two standards is proper under

7  clearly established federal law.

8        In determining whether California's SVPA violates equal protection, this Court must first ask

9  whether SVPs are similarly situated to MDOs and NGIs. Rosenbaum v. City and County of San

10 Francisco, 484 F.3d 1142, 1153 (9th Cir. 2007) (first step in equal protection analysis requires court

11 to identify the classification of groups which are similarly situation).  If these different categories of

12 committees are similarly situated, the Court must then determine, under intermediate scrutiny,

13 whether the SVPA's differential treatment of SVPs, vis-a-vis similarly situated civil committees, "is

14 substantially related to a sufficiently important governmental interest." City of Cleburne, supra, 473

15 U.S. at 441.

16       In analyzing Petitioner's equal protection claim, the Court of Appeal determined that SVPs

17 are not similarly situated to MDOs and NGIs.  However, shortly after the Court of Appeal rendered

18 its decision, the California Supreme Court reversed course and held that these three types of civil

19 committees are similarly situated for purposes of equal protection analysis. McKee, supra, 47

20 Cal.4th at 1203, 1207.  This Court need not decide whether the McKee Court's holding, that SVPs,

21 MDOs, and NGIs are similarly situated, is supported by clearly established federal law, as even

22 assuming arguendo the three groups are similarly situated, the state's varying procedures as to these

23 three groups appears to be "substantially related to a sufficiently important government interest."

24       Upon its initial passage of the SVPA in 1995, the California legislature made the following

25 findings regarding the statute's purpose:

26       The Legislature finds and declares that a small but extremely dangerous group of
         sexually violent predators that have diagnosable mental disorders can be identified
27       while they are incarcerated.  These persons are not safe to be at large and if released
         represent a danger to the health and safety of others in that they are likely to engage in
28       acts of sexual violence.  The Legislature further finds and declares that it is in the

U.S. District Court
E. D. California
                                              15

1   interest of society to identify these individuals prior to the expiration of their terms of
    imprisonment.  It is the intent of the Legislature that once identified, these
2   individuals, if found to be likely to commit acts of sexually violent criminal behavior
    beyond a reasonable doubt, be confined and treated until such time that it can be
3   determined that they no longer present a threat to society.

4   The Legislature further finds and declares that while these individuals have been duly
    punished for their criminal acts, they are, if adjudicated sexually violent predators, a
5   continuing threat to society.  The continuing danger posed by these individuals and
    the continuing basis for their judicial commitment is a currently diagnosed mental
6   disorder which predisposes them to engage in sexually violent criminal behavior.  It is
    the intent of the Legislature that these individuals be committed and treated for their
7   disorders only as long as the disorders persist and not for any punitive purposes.

8   Historical and Statutory Notes, foll. Cal. Welf. & Inst.Code § 6600.

9       In addition, Proposition 83 provided the following findings in support of the statute's

10  amendments:

11  Sex offenders have very high recidivism rates.  According to a 1998 report by the
    U.S. Department of Justice, sex offenders are the least likely to be cured and the most
12  likely to reoffend, and they prey on the most innocent members of our society.  More
    than two-thirds of the victims of rape and sexual assault are under the age of 18.  Sex
13  offenders have a dramatically higher recidivism rate for their crimes than any other
    type of violent felon.

14
    Voter Information Guide, Gen. Elec., text of Prop. 83.
15
        After reviewing California's civil commitment procedures, and the statute's underlying
16
    purposes, this Court finds that California's distinct treatment of its SVP's relative to its treatments of
17
    other civil detainees, is substantially justified by a legitimate interest in protecting the public from
18
    those who commit violent sexual offenses.  The California legislature's decision to impose different
19
    procedures with regards to its SVPs is well-supported by the SVP's increased risk of recidivism, the
20
    relative lower rates of success in reaching a cure for the SVPs' mental disorders, as well as the
21
    victim's vulnerability.  As the Ninth Circuit explained in Hubbart:  "the power of the State to confine
22
    persons who, by reason of a mental disease or mental abnormality, constitute a real, continuing and
23
    serious danger to society is well established." Hubbart, supra, 379 F.3d at 782 (quoting Justice
24
    Kennedy's concurring opinion in Hendricks, supra, 521 U.S. at 372); see also Addington, 441 U.S. at
25
    426 ("[T]he state also has authority under its police power to protect the community from the
26
    dangerous tendencies of some who are mentally ill").  For these reasons, and for the reasons
27
    previously discussed regarding the absence of clearly established federal law, Petitioner is not
28

U.S. District Court
E. D. California                                    16

1    entitled to relief on this claim.

2    **IV.    Certificate of Appealability**

3           A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

4    district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-

5    El v. Cockrell, 537 U.S. 322, 336  (2003).  The controlling statute in determining whether to issue a

6    certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may

7    issue a certificate of appealability where "the applicant has made a substantial showing of the denial

8    of a constitutional right."  Where the court denies a habeas petition, the court may only issue a

9    certificate of appealability "if jurists of reason could disagree with the district court's resolution of

10   his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

11   encouragement to proceed further."  Miller-El, 537 U.S. at 326; Slack v. McDaniel, 529 U.S. 473,

12   484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate

13   "something more than the absence of frivolity or the existence of mere good faith on his . . . part."

14   Miller-El, 537 U.S. at 338.  In the present case, the Court finds that reasonable jurists would not find

15   the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus

16   Petitioner's claim is not deserving of encouragement to proceed further.  Consequently, the Court

17   hereby denies a certificate of appealability.

18

19                                                    **ORDER**

20         Accordingly, the Court ORDERS that:

21         1.    The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

22         2.    The Clerk of the Court is DIRECTED to enter Judgment for Respondent; and

23         3.    A Certificate of Appealability is DENIED.

24          IT IS SO ORDERED.

25      **Dated:    September 8, 2011**                    **/s/ Dennis L. Beck**
                                                          UNITED STATES MAGISTRATE JUDGE

26

27

28

U.S. District Court

E. D. California                                          17